79 303
181s 35

## National Home B. and L. Association v. Home Savings Bank.

1. BUILDING ASSOCIATIONS—*Bound by the Acts of Agents—Estoppel.*
—A building association is bound by the acts of its accredited agents,
the same as other corporations under like circumstances, and is estopped
by their action from denying that it assumed and agreed to pay an
incumbrance according to the conditions of the deed conveying to it
the property in question.

2. SAME—*Power of Officers to Assume Incumbrances.*—Under the
circumstances of this case, where almost the entire management is left
in the hands of certain officers, assuming an incumbrance by a build-
ing association, under a clause inserted in a deed of conveyance to it by a
borrower, is within the scope of the powers implied by, if not actually
conferred upon its officers by the association, so far, at least, as third
parties are concerned.

3. SAME—*Ultra Vires.*—Where a building association purchases real
estate upon which it holds a mortgage, and as part consideration there-
for, assumes and agrees to pay an incumbrance upon other real estate,
such contract is not beyond the scope of its powers, and will be enforced.

Foreclosure.—Appeal from the Superior Court of Cook County; the
Hon. NATHANIEL C. SEARS, Judge, presiding. Heard in the Branch
Appellate Court at the March term, 1898. Affirmed. Opinion filed
December 23, 1898.

### STATEMENT.

The appellee filed its bill to foreclose a trust deed given
by Flora D. Bishopp to secure her principal note for $3,000,
payable to the order of Badenoch Bros., who sold and trans-
ferred said note to the complainant. The bill alleges that
subsequent to the execution and delivery of said trust deed,
the said Flora D. Bishopp conveyed the premises described
in said trust deed to the National Home Building and Loan
Association of Bloomington, Illinois, and that in and by
the acceptance of said deed of conveyance appellant
assumed and agreed to pay said incumbrance of $3,000.

Appellant's answer alleges that the assumption clause
in the deed was inserted without the knowledge or author-
ity of its board of directors; that it is a building and loan
association, organized and existing under and by virtue of
the Homestead Loan Association Laws of Illinois; that as
such corporation it could not purchase real estate upon

which it held no mortgage, and in which it had no interest; that it held no mortgage on the lot so conveyed to it at the time of the execution and delivery of the deed of said property from Flora D. Bishopp, which contained said assumption clause; and that the acceptance of such deed and the insertion of such clause was not within the scope of the authority of its officers and agents, was *ultra vires* and void. Answers were filed and also a cross-bill by Flora D. Bishopp and her husband.

The cross-bill alleges that the Bishopps made an agreement to trade lot five in question, subject to the incumbrance of $3,000, which the association agreed to assume and pay; also lot six, adjoining, subject to a loan of $6,000, made by the appellant association to said Flora D. Bishopp, which liability the association agreed to cancel, and release Mrs. Bishopp therefrom; and that the association also agreed to convey to her, in addition, certain other real estate which it owned, in Chicago, in exchange for said lots five and six, which agreements were performed.

The Superior Court confirmed the master's report, decreed the foreclosure and sale of said lot five in case the appellant association did not pay the debt due the complainant, and allowed execution against appellant for any deficiency after applying the proceeds of sale upon the amount found due.

CUTTING, CASTLE & WILLIAMS and WAGNER, BINGHAM & LONG, attorneys for appellant.

WINSTON & MEAGHER, attorneys for appellee Home Savings Bank.

ALEXANDER L. WHITEHALL, attorney for appellees Flora D. Bishopp and Jonathan D. Bishopp; RALPH MARTIN SHAW, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of the appellant that whatever may have been done by its officers or agent, the association did not assume and agree to pay the incumbrance upon lot five,

inasmuch as no formal action authorizing the purchase of the property and assumption of the debt was had by its board of directors; and that without such action neither the president and secretary, nor the agent of the association in Chicago, could bind the latter and subject it to liability.

The transaction was carried through on the part of the appellant by a " Special Loaning Agent" of the association having an office in Chicago. The president and secretary of the association testified that they were familiar with the trade, and that Duncan, the Chicago agent, was the medium through whom it was carried on. The secretary testifies that he came to Chicago before the transfers were made and looked over the property, returned and reported to the directors, and that "we gave Mr. Duncan directions." The secretary furthermore wrote to Duncan concerning the transaction, and in concluding his letter said: "We leave this matter in your hands, and know you will do the best you can for the association's interests." The attorney of the association examined the abstract of title to said lot five, and the association executed the deeds conveying to Flora D. Bishopp the real estate which she received in exchange, and as part of the consideration for lots five and six, which she conveyed to the association.

Duncan testifies that the clause in the deed by which the association assumed and agreed to pay the $3,000 incumbrance on lot five, was put in under an agreement between the association, represented by its secretary, and Mr. and Mrs. Bishopp; and that the secretary authorized him to put the stipulation in the deed. In this he is contradicted by the secretary. But the fact remains undisputed that the officers of the association did recognize Duncan as its authorized agent to conduct the transaction, clothed him with apparent authority at least, and ratified his action in the premises by the execution of deeds conveying to Mrs. Bishopp the property exchanged, and accepted and retained the deed from Mrs. Bishopp conveying her property to the association containing the assumption clause.

The association paid also an additional $600 incumbrance upon lot five, and paid some interest on the incumbrance in controversy. It held the deed from Mrs. Bishopp more than a year after it was recorded, and if it did not know that deed contained the assumption clause, it can not now be heard to plead ignorance. A building association is no less bound by the acts of its accredited agents than other corporations would be under like circumstances, and we think the association must be held estopped from denying that it assumed and agreed to pay the incumbrance on lot five, as per the terms of the deed which conveyed to it the property in question. P. W. B. R. R. Co. v. Quigley, 21 How. (U. S.) 202; Metropole Bath Co. v. Garden City Fan Co., 50 Ill. App. 681.

It is said in N. E. Fire and M. Ins. Co. v. Schettler, 38 Ill. 166, 171, that unless a corporation "may be bound by the acts and admissions of their officers and agents acting in the ordinary affairs of the corporation, so far as relates to the business usually transacted by such officers and agents, they would enjoy an immunity incompatible with the rights of individuals and destructive of the object of their creation."

It appears from the testimony in this case that the directors, some of whom now plead ignorance of this transaction, left the almost entire management of the affairs of the association in the hands of the president and secretary. Under the circumstances, the transaction in question must be considered as within the scope of the powers impliedly if not actually conferred upon these officers by the association, so far at least as third parties are concerned, and to have been the act of the corporation itself.

But it is strenuously urged that the contract in question, even if it be considered as made by and as the act of the corporation, was, nevertheless, *ultra vires*, and hence illegal, void, and not binding upon the association, because the latter, it is said, had no power to acquire title to lot five, upon which it had no mortgage and in which it had no interest.

Section 13 of the Homestead Loan Association Act (Rev.

Stat. Chap. 32, paragraph 90), provides that associations incorporated thereunder may purchase at any sale, "public or private, any real estate upon which such association may have or hold any mortgage, lien or other incumbrance, or in which said association may have an interest."

The deed conveying to the association lot five, and containing the clause wherein the association "assumes and agrees to pay" the $3,000 incumbrance in controversy, secured on said lot five, also conveys lot six, and contains a clause whereby the appellant assumes and agrees to pay a $6,000 incumbrance to itself secured on said lot six. There is no question but that the purchase of lot six, upon which the association held this mortgage, was within the power of the appellant and expressly authorized by statute. But so far as appears from the deed, the transaction was one and indivisible. It is impossible to say what part of the consideration was paid for lot five, or what part for lot six. It may very well be that the assumption of this $3,000 note, and the agreement of the association to pay it, although secured upon lot five, was a part of the consideration for the transfer of lot six. The consideration named in the deed was $20,000, of which the $3,000 and the $6,000—a total of $9,000— secured upon the two lots, appear to have been a part. When the appellant agreed, as it did by the terms of the conveyance, to pay this $3,000 note and relieve its grantor of that liability, the fact that it was secured on lot five does not authorize us to say that it was not a part of the consideration for lot six, which appellant had undoubted power to purchase. The appellant, by the terms of the conveyance, agreed to pay for the benefit of the grantor a $3,000 note. If it had paid to Mrs. Bishopp in cash $3,000, and she had used it to pay her note for that sum, secured upon lot five, the consideration would have been precisely the same. There is evidence tending to show that the transfer of lot six would not have been made unless the association had assumed and agreed to pay both these incumbrances, as a part of the consideration. It is immaterial whether the association had or had not power to acquire title to lot five.

Its liability is based upon its obligation to pay the consideration agreed upon for real estate which it has acquired, and had power to acquire. Its contract so to pay is not beyond the scope of its powers, and it has received the consideration for its agreement.

The judgment of the Superior Court is affirmed.